United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT B. YEE,

    Plaintiff,

  v.

VERNA LIN,

    Defendant.

No. C 12-02474 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

## INTRODUCTION

In this email-hacking dispute, defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff Robert Yee and defendant Verna Lin are parties to a divorce action filed in Alameda County Superior Court. That action settled but awaits a final judgment, and dissolution of marriage was granted. Plaintiff alleges that during the divorce proceedings defendant intentionally and without consent hacked into his email accounts. Specifically, she hacked the email provider facilities of Yahoo and Google, and accessed personal, business and attorney/client information contained therein. Plaintiff alleges that his email was hacked at least thirteen times before he discovered defendant's conduct and changed his password (First Amd. Compl. ¶¶ 5, 6, 8, 10).

Plaintiff states four claims for relief: (1) violation of 18 U.S.C. 2701 of the Stored Communication Act; (2) violation of CA Penal Code Section 502(c)(2); (3) intrusion upon seclusion tort; and (4) intentional interference with prospective economic relations. Plaintiff alleges that the email hacking resulted in loss of profits from two business ventures in China. Yee states that he was fired from a Tianjin development project after disclosing that defendant had hacked into his email accounts. He further states that he experienced a hostile business environment involving a Shanghai joint venture as a result of defendant disclosing confidential information contained in his email accounts. Plaintiff alleges he lost profits from these failed business ventures. In the instant motion, defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (First Amd. Compl. ¶¶ 14–15).

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. Of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). A complaint, on its face, needs to be plausible, meaning that "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

1. **SUBJECT-MATTER JURISDICTION.**

    A. **Article III Standing.**

Lack of Article III standing requires dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1). *Simmonds v. Credit Suisse Sec.*, 638 F.3d 1072, 1082 (9th Cir. 2011). Article III standing requires the demonstration of three elements: (1) plaintiff suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of defendant; and (3) it is

2

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). For purposes of ruling on a motion to dismiss for lack of standing, all material allegations of the complaint are accepted as true and the complaint is construed in favor of the complaining party. Standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500–01 (1975).

Defendant argues that plaintiff lacks Article III standing for lack of injury in fact. Not so. *First*, plaintiff has alleged an injury in fact for all claims because he contends that plaintiff's unauthorized access to his email resulted in injury to his business opportunities and profits. A determination of standing does not require an analysis of the merits. *Warth*, 422 U.S. at 500–01.

Defendant contends that plaintiff's allegation that he "was going to be compensated by his clients upon the funding of the [first] development project which has not occurred" (First Amd. Compl. ¶ 14), is a judicial admission that no funding occurred and thus there was no lost profits and no injury. Plaintiff's allegation is too ambiguous to construe such a finding. It is more likely that plaintiff was referring to the fact that he had not been compensated.

*Second*, plaintiff also identified an additional basis for satisfying the injury in fact requirement. In this action, plaintiff alleges that his statutory rights under the Stored Communications Act and the California Penal Code Section 502 have been violated. These two statutes provide protections against hacking an electronic communications facility or a computer network. Injury in fact may exist by virtue of "statutes creating legal rights, the invasion of which creates standing." *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).

Additionally, defendant contends that plaintiff fails to allege an injury fairly traceable to plaintiff's actions. This is not so. Plaintiff alleges that defendant's actions of repeatedly hacking into his emails, which contained confidential and sensitive information, caused two business ventures to fail and resulted in monetary expenses related to analyzing the scope of the infiltration. These injuries are fairly traceable to the alleged hacking of sensitive information.

3

Possibly, little of this is really true but at the pleading stage, we must accept the well-pled allegations as true. Plaintiff has standing to bring these claims.

### B. Other Limits on Subject-Matter Jurisdiction.

Defendant contends that this action should be adjudicated in state court because (1) plaintiff seeks to modify the state court judgment regarding the divorce settlement and (2) the abstention doctrine bars subject-matter jurisdiction to this action.

These arguments are now moot. At oral argument, plaintiff stated on the record that he no longer seeks compensatory damages related to the divorce settlement. Plaintiff has now limited his claims to compensatory damages of loss of business opportunities, statutory fees, punitive damages and attorney's fees. As a result, the divorce settlement is no longer at issue in this action. The alleged email-hacking torts are no longer entangled with the state court divorce proceedings such that this action will interfere.

At oral argument, defendant responded that the general release places the divorce at issue in this action. Not so. It is premature to anticipate whether a general release of all claims will result from the divorce settlement. If defendant receive a general release, she may raise it as an affirmative defense in her answer. Accordingly, defendant's Rule 12(b)(1) motion is **DENIED**.

### 2. FAILURE TO STATE A CLAIM.

### A. Claim One: Stored Communications Act.

The Stored Communications Act provides a private right of action against anyone who (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and (3) thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system. Plaintiff alleges that:

> L[i][n] intentionally, knowingly and with the conscious objective of doing harm to Y[e][e] accessed the website of an electric communications service, specifically the email provider facilities of Yahoo and Google, and by using the password she had obtained without Y[e][e]'s permission or authority, accessed Y[e][e]'s private email accounts which were in electronic storage on the servers of the electronic communication services . . . , [and] accessed, obtained, copied, saved and/or used the emails.

4

(First Amd. Compl. ¶¶ 8, 25). Additionally, plaintiff provides specific times, dates and emails that were allegedly hacked. For example, plaintiff alleges that on March 25, 2012, he wrote an email at 2:21 PM to his attorney discussing litigation issues related to the divorce. He further alleges that Lin intentionally logged on to his email at 9:01 PM and read confidential attorney/client emails. She then copied and saved these emails and divulged the content to third-persons such as Lin's attorney and Yee's business associate (First Amd. Compl. ¶¶ 16–18). The divorce proceedings provide enough factual context to support plaintiff's allegations that defendant's action were without permission and intentional. It is also plausible that if defendant divulged the contents of the emails then she obtained the emails by either saving or copying them. Furthermore, defendant contends no actual harm was alleged. Not so. Plaintiff sufficiently alleges actual damages of lost profits and impaired business relationships as a result of the email hacking. Plaintiff's claim under the Act is sufficiently pled.

### B. Claim Two: California Penal Code Section 502(c)(2)

California Penal Code 502(c)(2) holds liable anyone who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system or computer network. . . ." Section 502(e)(1) provides:

> [i]n addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief. Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access . . . .

Defendant contends that plaintiff does not have standing to bring a claim under Section 502(c)(2) because he is not "the owner of the . . . data" and has not suffered a loss by reason of a violation. Plaintiff, however, alleges that he owns the data contained in his email accounts. Furthermore, plaintiff alleges that the email hacking caused him to incur "monetary expenses associated with responding to Lin's unauthorized access including, but not limited to expenses related to identifying, inspecting, analyzing and rectifying Lin's improper actions." For example, plaintiff alleges that at a business meeting on March 30, 2012 in China, he disclosed to his client that

5

"sensitive business information about their project could have been compromised." Accordingly, standing to sue under Section 502(e) is met. The rest of defendant's arguments repeat those made under the Stored Communications Act. For the same reasons discussed above, plaintiff has pled sufficient facts to state a claim under Section 502.

### C. Claim Three: Intrusion Upon Seclusion Tort.

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Whether conduct is offensive depends on "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which [s]he intrudes, and the expectations of those whose privacy is invaded." *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997). Plaintiff alleges that defendant intentionally intruded on his right to privacy and solitude by:

> intentionally accessing and/or wrongfully disclosing the contents of his personal, business and privileged email communications between [p]laintiff and third parties . . . [which] was offensive and objectionable to [p]laintiff Y[e][e] and would be offensive and objectionable to a reasonable person of ordinary sensibilities in that it exposed [p]laintiff Y[e][e]'s private, privileged and confidential affairs to [d]efendant L[i][n] and other unauthorized persons, gained unfair advantage for [d]efendant L[i][n] in the [d]ivorce [c]ase and/or otherwise for the purpose of her own and others financial gain.

(First Amend. Compl. ¶¶ 47, 49). As discussed above, plaintiff has pled sufficient facts to establish that defendant intentionally accessed his email without consent which resulted in damages. Plaintiff also pled that his emails contained personal, confidential and private communications. This is sufficient to plead the invasion of privacy requirement. Moreover, the context of the intrusion, allegedly occurring during a contested divorce and the thirteen alleged unauthorized entries into his email is sufficient to plead the highly offensive to a reasonable person requirement. Accordingly, plaintiff has pled sufficient facts to state a claim for the tort of intrusion upon seclusion.

6

### D. Claim Four: Interference with Prospective Economic Relations.

Intentional interference with prospective economic relations requires the following elements:

> (1) the existence of a specific economic relationship between [plaintiff] and third parties that may economically benefit [plaintiff]; (2) knowledge by [defendant] of this relationship; (3) intentional acts by [defendant] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the [plaintiff].

*Rickards v. Canine Eye Registration Foundation, Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983). In addition, defendant's conduct must be "wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392 (1995).

Plaintiff alleges that defendant intentionally interfered with two business ventures that failed. Plaintiff's allegation that defendant "knew or was substantially certain that interference with Y[e][e]'s economic and business interests would result from her actions [of hacking his email]" lacks factual support.

With regard to the first business deal, plaintiff alleges that he was fired from a Tianjin development project for disclosing to his business associate that his emails were hacked by defendant. This is insufficient to show that defendant's actions were designed (or reasonably likely) to disrupt plaintiff's business interest. It was plaintiff who disclosed the infiltration, not defendant. Nothing pled plausibly shows such disclosure was likely to happen.

As for the second business deal, plaintiff alleges that:

> the business relationship between Y[e][e] and his [business] associate[] [Lin Hua Cheng] in China was in fact disrupted by L[i][n]'s intentional interference by creating a hostile and uncooperative business environment . . . [resulting in] denied specific payments, refused attendance at important business meetings and experienced disruption of the distribution of funds to which he was entitled.

(First Amd. Compl. ¶¶ 15, 56). Again, this is not specific enough to support the allegation that defendant's actions were designed to disrupt plaintiff's business interests, even if actual disruption occurred. Plaintiff also does not provide specific facts to support the allegation that

7

defendant knew of the business relationship. Notably, plaintiff does not specify the content of the emails disclosed to the business associates. Without these important facts, the allegations are merely conclusory. Plaintiff's claim for intentional interference with prospective economic relations is **DISMISSED.**

## CONCLUSION

For the reasons mentioned above, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, notice on the normal 35-day track, for leave to file an amended complaint in order to further develop their claims. A proposed amended complaint must be appended to the motion and plaintiff must plead their best case. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein. Failing a timely motion, the answer will be due **21 CALENDAR DAYS** after the deadline.

**IT IS SO ORDERED.**

Dated: September 20, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE